IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| CAROLYN DAMERON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:11-0134-DGK-SSA |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING COMMISSIONER'S DECISION

Plaintiff Caroyln Dameron seeks judicial review of the Commissioner of Social Security's denial of her application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et. seq.*, and her application for supplemental security income (SSI) based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381 *et. seq.* Plaintiff has exhausted all of her administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

Dameron contends she is disabled because of shoulder problems, back problems, depression, and high blood pressure. The Administrative Law Judge ("ALJ") denied Dameron's applications, finding that while she possessed several severe impairments, she retained the residual functional capacity to perform simple, routine, sedentary work with a variety of restrictions. The ALJ also found Dameron could perform work existing in significant numbers in the national economy, specifically as a bonder/semi-conductor, a patcher, and a lens inserter. Dameron argues the ALJ erred in determining her residual functional capacity and finding she could perform work existing in significant numbers in the national economy.

After reviewing the record, the Court finds the ALJ's decision is supported by substantial evidence on the record as a whole, and the Commissioner's decision is AFFIRMED.

**Factual and Procedural Background**

A summary of the entire record is presented in the parties' briefs and so is repeated only where necessary below.

Dameron filed her applications for disability benefits and supplemental security income on February 14, 2005 and January 28, 2008. The Commissioner denied the first application and Dameron appealed. On July 1, 2009, the Honorable Nanette K. Laughrey, United States District Judge for the Western and Eastern Districts of Missouri, remanded the claim filed on February 14, 2005 for further consideration. On July 21, 2009 the Appeals Council consolidated the applications and directed the ALJ to issue a new decision on the consolidated applications. Following a new hearing on November 23, 2010, the ALJ held Dameron was not disabled as defined by the Act.

**Standard of Review**

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's conclusion. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court may not reverse the Commissioner's decision as long as substantial evidence in the records supports this decision, even if substantial evidence in the

record also supports a different result, or if the court might have decided the case differently were it the initial finder of fact. *Id.*

## Analysis

Generally, a federal court's review of the Commissioner's decision to deny an application for benefits is restricted to determining whether the Commissioner's decision is consistent with the Act, the regulations, and applicable case law, and whether the findings of fact are supported by substantial evidence on the record as a whole. In determining whether a claimant is disabled, the Commissioner follows a five-step evaluation process.[1]

Plaintiff contends the ALJ erred: (1) at step four by not applying the correct standard to assess Dameron's residual functional capacity ("RFC"); and (2) at step five by finding she could work as a patcher and lens sorter, because these jobs require the ability to reach on a frequent basis and she is limited to reaching on an occasional basis. The Court finds no merit to these arguments.[2]

---

[1] The five-step process is as follows: First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity. If so, he is not disabled; if not, the inquiry continues. At step two the Commissioner determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments. If so, and they meet the durational requirement of having lasted or being expected to last for a continuous 12-month period, the inquiry continues; if not, the applicant is considered not disabled. At step three the Commissioner considers whether the impairment is one of specific listing of impairments in Appendix 1 of 20 C.F.R. § 404.1520. If so, the applicant is considered disabled; if not, the inquiry continues. At step four the Commissioner considers if the applicant's residual functional capacity ("RFC") allows the applicant to perform past relevant work. If so, the applicant is not disabled; if not, the inquiry continues. At step five the Commissioner considers whether, in light of the applicant's age, education and work experience, the applicant can perform any other kind of work. 20 C.F.R. § 404.1520(a)(4)(i)-(v) (2009); *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). Through step four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King*, 564 F.3d at 979 n.2.

[2] In the summary of her brief captioned "The Issues Presented by Dameron for the Court's Review," Dameron suggests she will make a third argument, namely that substantial evidence does not exist to support the ALJ's RFC determination. Dameron, however, never actually makes this argument, and so the Court will not consider it.

3

**A.     The ALJ properly formulated Dameron's RFC.**

Dameron first contends that the ALJ did not apply the correct standard in assessing his RFC. Dameron does not, however, identify what standard was used, why it was incorrect, or what standard the ALJ should have used instead.

The Court finds the ALJ followed the applicable law and regulations in formulating Dameron's RFC, and that the ALJ's determination is supported by substantial evidence on the record. A RFC determination must be based upon all the evidence in the record. *See Pearsall v. Massanari*, 274 F.3d 1211, 1217-1218 (8th Cir. 2001). Before determining an applicant's RFC, the ALJ must assess the credibility of her subjective complaints. "[Q]uestions of fact, including the credibility of a plaintiff's subjective testimony, are for the [ALJ] to decide, not the court. *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir. 1987).

In this case, the ALJ found that Dameron's testimony was not entirely credible. R. at 934-43. The ALJ's treatment of the subjective aspects of her complaints complies with the regulations, 20 C.F.R. §§ 404.1529, 416.929, and the framework set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). Dameron does not deny that the evidence on the record supports the ALJ's decision to discount her credibility, nor could she. More than ample evidence supports it. Dr. Hershel Goren, M.D., testified about all of the objective medical evidence of record and concluded that it did not support Dameron's complaints to the extent alleged. R. at 1515-19. Dr. Steven Hendler, M.D., found that the objective medical evidence demonstrated few abnormalities and that during testing there was "marked amplification of [Dameron's] pain response." R. at 468. Dr. David J. Clymer, M.D.,

also found that Plaintiff was hypersensitive with some significant symptom magnification. R. at 197-98. Dr. Ashley Ferraro, M.D., questioned Plaintiff's effort during her physical examination. R. at 520. Last but not least, Dr. Jack Edmisten, M.D., noted during his psychiatric evaluation that Dameron's physical limitations were less restrictive than she alleged. He observed her lift her body out of a chair with her arms and pick up her heavy purse. He also watched her walk down a hallway staying close to the wall, but when she got to the elevator area, she was able to walk without any problem. R. at 523.

In formulating her RFC, the ALJ also properly considered and discussed the medical opinion evidence concerning Dameron's mental and physical complaints, including her obesity. R. at 940-43. The ALJ's discussion of Dameron's mental complaints is noteworthy because it demonstrates that the ALJ's opinion is thorough and well-supported by the record. The ALJ gave great weight to Dr. Kathleen King's, Ph.D., estimate that Dameron's cognitive functioning was average based on her mini-mental status exam score, her ability to read simple sentences, her vocabulary, and her fund of information. R. at 940-41, 1419-22.

The ALJ also properly discounted an undated medical source statement submitted by Dr. John Stanley, noting he apparently completed it well after his last treatment of Dameron. R. at 943, 1435-39. She also held that Dr. Stanley's opinion that Dameron suffered from extreme mental limitations was not supported by the record. R. at 943, 1435-39. The ALJ specifically noted that Dr. Stanley assigned an overall global assessment of functioning ("GAF")[3] score of 30, a score which suggests an individual with extreme mental difficulties. R. at 943, 1435. By comparison, a GAF of 21-30 denotes behavior which is influenced considerably by delusions or hallucinations, serious impairment in communication or judgment, or inability to function in

---

[3] A GAF is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 30-32 (4th Ed. Text Revision 2000).

5

almost all areas. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 34 (4th Ed. Text Revision 2000). This does not appear to be the case with Dameron, who reports engaging in many activities of daily living, including taking care of her disabled son.

Finally, the ALJ noted that in 2005, the year after Dameron alleges she was disabled, she earned $9,916.00. This demonstrates an ability to perform substantial gainful activity and diminishes her credibility. *See Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005). Consequently, substantial evidence supports the ALJ's credibility findings.

After weighing Dameron's credibility, the ALJ formulated Plaintiff's RFC. Although it is a medical determination, RFC findings are not based only on "medical" evidence, i.e., evidence from medical reports or sources; rather an ALJ formulates RFC based on all the relevant, credible evidence. *See McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). In this case, the ALJ considered all the relevant, credible evidence and found Dameron had the RFC to perform:

> simple, routine work at a sedentary level of exertion, as defined in 20 C.F.R. 404.1567(a) and 416.967(a), in that she is able to lift and/or carry 10 pounds occasionally, a nominal amount frequently, stand and/or walk for 2 hours of an 8 hour workday, and sit for 6 hours of an 8 hour workday. She can occasionally reach or push and pull overhead with her upper extremities, and occasionally climb ramps or stairs and occasionally stoop, kneel, crouch, but she cannot climb ladders, ropes, or scaffolds, she cannot crawl or balance (except as she would normally balance to walk and move around), work around unprotected heights or dangerous machinery, or engage in work activity that requires high production (for example, assembly line work) or quotas (for example, piecework).

R. at 934. Substantial evidence from Dr. Goren, who reviewed the entire record, supports these detailed findings. Consequently, there is no error here.

### B. The ALJ properly found that Plaintiff could perform work existing in significant numbers.

Dameron also complains the ALJ erred at step five by finding she could perform specific jobs existing in significant numbers in the national economy. Pl.'s Br. at 23-25. During the hearing, the ALJ asked the vocational expert ("VE") a hypothetical question setting out Dameron's limitations concerning her condition and functional limitations. R. at 1540. The VE testified that Dameron could perform a range of sedentary work existing in significant numbers in the local and national economies, including jobs such as bonder/semi-conductor, patcher, and lens sorter. R. at 1541. Dameron argues that the VE's testimony conflicts with the Dictionary of Occupational Titles' (DOT) findings concerning the mobility required to work as a patcher or lens inserter, because those positions require more than occasional reaching. Pl.'s Br. at 23-25.

The problem with this argument is that the premise is incorrect. The ALJ did not find that Plaintiff was restricted to occasional reaching; the ALJ found Plaintiff was restricted to "occasional *overhead* reaching and pushing and pulling." R. at 1540 (emphasis added). The ALJ did not otherwise limit Plaintiff's ability to reach. R. at 1540. Since the DOT does not indicate that either position requires more than occasional overhead reaching, there was no conflict between the DOT and the VE's testimony. In fact, when the ALJ asked the VE if her testimony was consistent with the DOT, the VE answered that it was consistent with the DOT and her professional experience. R. at 1541.

Finally, even if Dameron were correct that the patcher and lens inserter positions are incompatible with her limitations, there is no question that the bonder/semi-conductor position does not require more than occasional reaching. "Work exists in the national economy when there is a significant number of jobs *(in one or more occupations)* having requirements which [the claimant is] able to meet." 20 C.F.R. § 404.1566(b) (emphasis added). The VE testified

7

Case 4:11-cv-00134-DGK   Document 17   Filed 09/24/12   Page 7 of 8

that there are 1,820 bonder/semiconductor positions in Missouri, and 66,500 in the national economy. R. at 1541. While the Eighth Circuit has been reluctant to identify a specific number of jobs as being significant, it has found significant numbers of jobs existed where there were fewer than the number available here. *See, e.g., Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (finding 200 jobs a significant number); *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988) (finding 500 jobs a significant number).

Accordingly, the ALJ properly held Dameron could perform a job which exists in significant numbers and so she is not disabled.

## Conclusion

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date: September 24, 2012                    /s/ Greg Kays
                                            GREG KAYS, JUDGE
                                            UNITED STATES DISTRICT COURT